IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
          )
  v.       ) Criminal No. 05-387
          )
THOMAS THORNTON    )

## O P I N I O N

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Thomas Thornton ("petitioner"). For the following reasons, petitioner's §2255 motion will be denied.

On June 23, 2005, a grand jury returned a one-count indictment charging petitioner with possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1) and §924(e). The case was assigned to the Honorable Thomas M. Hardiman[1] and Attorney Arnold I. Klein was appointed to represent petitioner.

After waiving his right to a trial by jury, petitioner proceeded to a bench trial before Judge Hardiman. At the trial, a number of eyewitnesses, including several police officers, testified to having observed petitioner in actual or constructive possession of a handgun before, during and after the commission of a robbery. In light of the evidence, Judge Hardiman found petitioner guilty.

---

[1] Judge Hardiman presided over all aspects of this case from indictment through sentencing. Judge Hardiman subsequently was appointed to the United States Court of Appeals for the Third Circuit, and the case was re-assigned to this member of the court upon petitioner's filing of the pending §2255 motion.

After trial, petitioner filed a motion for a new trial pursuant to Fed. R. Crim. P 33(a) grounded on newly discovered evidence. Specifically, petitioner argued that a Computer-Aided Dispatch Call (CAD) report of the 911 call describing the events surrounding the robbery entitled him to a new trial. He averred that prior to trial his investigator was informed that the recording of the 911 call no longer existed but that approximately one month after the trial petitioner was able to obtain a copy of the CAD report. Judge Hardiman denied the motion for new trial finding that the newly discovered evidence probably would not have produced an acquittal and that the CAD reports could have been discovered through due diligence prior to trial.

On October 26, 2006, petitioner was granted a substantial downward variance from the applicable guideline range of 262-327 months and was sentenced to a term of imprisonment of 180 months, the statutory minimum under 18 U.S.C. §§922(g)(1) and 924(e).[2] Petitioner filed a direct appeal from the denial of his motion for new trial.[3] The Court of Appeals for the Third Circuit held that the district court did not err in denying petitioner's motion for new trial and affirmed the Judgment of conviction and sentence.

---

[2]     18 U.S.C. §924(e) authorizes an enhanced sentence for a defendant who violates 18 U.S.C. §922(g) and who "has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another ...."     Here, petitioner had 4 previous convictions for serious drug offenses or violent felonies.

[3]     Petitioner was represented on appeal by Attorney Joseph M. Yablonski.

AO 72
(Rev. 8/82)

Petitioner subsequently filed the pending §2255 motion asserting eight grounds of ineffective assistance of counsel against his trial counsel, Attorney Klein. Specifically, petitioner alleges that Attorney Klein violated his Sixth Amendment right to counsel under the United States Constitution by failing to:

1.  Initiate plea discussions;

2.  Explain adequately to petitioner the waiver of his right to trial by jury;

3.  Exercise due diligence in obtaining the CAD report of the 911 call relating to the robbery in question;

4.  Investigate the criminal record of an eyewitness, Robert Eicher, who testified for the government;

5.  Advise petitioner that the decision not to testify belonged to petitioner, not to counsel;

6.  Call Jason Collins as a defense witness;

7.  Object to petitioner's status as a "career offender" at sentencing; and,

8.  Request credit for time served on a state sentence.

Upon due consideration of petitioner's motion and the government's response thereto (Document No. 83), the court finds that petitioner is not entitled to relief under §2255.[4]

---

[4] Where the record conclusively shows that a movant is not entitled to relief, the court may dismiss the motion based on the record without a hearing. See United States v. Nahodil, 36 F.3d. 323, 326 (3d Cir. 1994). If the record conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In this case, the court finds, for the reasons set forth in this opinion, that no hearing is required because the record affirmatively establishes that petitioner is not entitled to relief under §2255.

AO 72
(Rev. 8/82)

## Standard of Review

A federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). In general, §2255 is a vehicle to cure only jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice" or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979).

## Factual Background

Briefly, this case centers around an incident that occurred on July 10, 2004. At about 10:30 P.M., Officers Derek Stitt and Timothy Bliss were responding to a call of an armed robbery in progress in the 2700 block of Garbett Street in McKeesport. They then received a second call describing the vehicle in which the armed robbers left the scene as a 1993 Chevrolet Corsica with Pennsylvania Registration number FPC-8020. The description of the vehicle was obtained from a 911 call placed by an eyewitness, Robert Eicher, who had observed the robbery from a neighbor's porch. The call indicated that the vehicle was traveling down Grandview Avenue. Based on the information in the second call, Stitt and Bliss initiated a traffic stop of the suspect vehicle.

As the officers shined their lights into the passenger compartment, Bliss observed petitioner, the right front seat passenger, look directly at the police light before leaning forward and ducking downward and reaching under his seat. In light of the radioed information about an armed robbery, Bliss believed petitioner likely was making a movement to reach for a weapon. Petitioner's dipping of his shoulder as if reaching under the seat also was observed by Stitt. The officers ordered petitioner, the driver, Jason Collins, and a rear seat passenger, Michael Margie, out of the vehicle.

After all of the occupants had exited the vehicle, Officer Neil Sibley, who had just arrived on the scene, observed the butt of a firearm protruding from under the front passenger seat. The firearm was seized and observed to be a New England .32 caliber revolver that was fully loaded with five rounds of ammunition and its hammer cocked back. A shotgun also was recovered from the trunk of the vehicle.

At trial, the government presented the testimony of Officers Bliss, Stitt, Sibley and Carl Kuzer; Agent Brian Fattori; Robert Eicher; and Michael Margie. Petitioner called two witnesses, John Domingo and Trebor Queen. Based on the evidence and testimony, Judge Hardiman found beyond a reasonable doubt that petitioner possessed the .32 caliber revolver charged in the indictment during the armed robbery and also found beyond a reasonable doubt that petitioner was in constructive possession of that same revolver during the traffic stop following the robbery.

The first independent ground for petitioner's conviction, that he possessed the firearm during the armed robbery, was based in part on the fact that Judge Hardiman found Eicher's testimony to be "extremely credible." Eicher had testified that he had observed a "tall thin black man with a white shirt" - later identified as petitioner - hold a handgun and a "heavier black man" hold a shotgun during the robbery. Eicher's testimony was consistent with Margie's and, as Judge Hardiman pointed out, "Eicher had no stake in the game."

The second independent ground for petitioner's conviction, that he was in constructive possession of the firearm at the time of the traffic stop, was based on the testimony of Officers Bliss and Stitt as to what they had observed as well as the testimony of Officer Sibley as to what Bliss had told him he had observed. Judge Hardiman also found the testimony of all three of the officers to be consistent with the testimony of Margie as to what he had seen while seated in the backseat of the vehicle during the traffic stop.

## Discussion

### Ineffective Assistance of Counsel

Petitioner's §2255 motion raises eight separate allegations of ineffective assistance of counsel against his defense attorney, Arnold I. Klein, Esq., who represented petitioner at all relevant times from the pretrial proceedings through trial and sentencing.

In order to prevail on a claim that counsel rendered constitutionally ineffective assistance, petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and, (2) that the deficient performance actually prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

The first <u>Strickland</u> prong requires the petitioner to demonstrate that counsel's performance was deficient. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. <u>Id</u>. at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. <u>Id</u>. at 690. The petitioner has the burden of overcoming the strong presumption that counsel was effective. <u>Id</u>. at 689.

If deficient performance is established, the second prong of the <u>Strickland</u> analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. <u>Id</u>. at 694.

✎AO 72
(Rev. 8/82)

The court will address seriatim each of petitioner's alleged grounds of ineffective assistance in accordance with the foregoing standard.

Petitioner's first ground alleges that Attorney Klein rendered ineffective assistance by "failing to initiate plea bargaining negotiations with the government." The only evidence petitioner offers in support of this allegation is an "Affidavit of Thomas Thornton" in which he avers: "Prior to trial my lawyer did not discuss plea bargaining with me or even attempt to negotiate a plea bargain with the government. If counsel had presented a proposed plea bargain to me, it is highly likely I would have accepted it instead of proceeding to trial." Exhibit A to Petitioner's Motion.

The court finds that this ground lacks factual support and otherwise is without merit. First, petitioner's self-serving averment that his attorney failed to initiate plea negotiations is inconsistent with the evidence submitted by the government, which shows that Attorney Klein in fact did discuss with the Assistant United States Attorney the ramifications of going to trial versus entering a plea. Exhibit 2 to Government's Opposition to Petitioner's §2255 Motion. However, because of the statutory mandatory minimum sentence of not less than 15 years to which defendant was subject pursuant to 18 U.S.C. §924(e), the government could not offer petitioner any plea deal which may have resulted in a sentence of less than 15 years unless defendant agreed to cooperate.

The government has also submitted correspondence from the Assistant United States Attorney to Attorney Klein containing a proffer letter for defendant's cooperation. Exhibit 3 to Government's Opposition to Petitioner's §2255 Motion . It was defendant, however, not his counsel, who refused to cooperate in a manner that may have resulted in a substantial assistance plea agreement.

Even assuming, arguendo, that petitioner's averments are true that his counsel failed to "even attempt to negotiate a plea bargain with the government," he cannot establish that counsel's performance was deficient. First, "a defendant has no right to be offered a plea ... nor a federal right that the judge accept it." Missouri v. Frye, ___ U.S. ___, 2012 WL 932020 at * 10 (March 21, 2012)(citations omitted). Moreover, although petitioner baldly asserts that it is "highly likely" he would have accepted a plea bargain had it been presented to him, he does not contend that the government made a formal offer of a favorable plea that his counsel failed to communicate to him. See, Frye, 2012 WL 932020 at *8 (defense counsel has duty to communicate formal offers from prosecution to accept a plea on terms and conditions that may be favorable to accused).

Nor has petitioner shown prejudice resulting from any alleged deficient performance in plea negotiations. As already noted, the statutory mandatory minimum for petitioner's offense of conviction is a term of imprisonment of not less than 15 years. Thus, the most favorable terms that the government could have offered to

AO 72
(Rev. 8/82)

petitioner in exchange for a guilty plea instead of proceeding to trial, as he indicates he would have done, would have been 180 months, the exact sentence that he received after Judge Hardiman varied downward from the advisory guideline sentencing range of 262-327 months. Accordingly, even if petitioner's averments are taken as true, and counsel's failure to negotiate a plea could be said to constitute deficient performance, petitioner was not prejudiced thereby.

Petitioner's second allegation of ineffective assistance of counsel also lacks factual support in the record. Petitioner avers that his trial counsel failed to explain to him adequately what the waiver of his right to trial by jury meant and that had he known that a jury would be composed of 12 members, that he could participate in the selection of the jury and that a jury's verdict must be unanimous, he would have insisted on a trial by jury.

Petitioner's allegation that his counsel did not explain to him his constitutional right to trial by jury is belied by the record. First, defendant signed a written waiver which explicitly states that he was waiving his Sixth Amendment right to trial by jury and that he was consenting to proceed with a non-jury trial after "having been informed of my constitutional right to a trial by jury ... and having discussed this right with my counsel." (Document No. 30).

In addition, at the commencement of the bench trial, Judge Hardiman specifically inquired as to whether petitioner understood

that he has a constitutional right to trial by jury and whether it was his desire to waive that right, to which petitioner responded "yes." Transcript of Non-Jury Trial, p. 3. When Judge Hardiman inquired of Attorney Klein whether he had discussed the matter with his client, Attorney Klein responded "at length" and indicated that petitioner's waiver was consistent with his advice. Id. Following this colloquy, Judge Hardiman found that defendant knowingly and intelligently waived his right to a jury trial. Id. Thus, petitioner's allegation that he was not informed of the nature of his right to a jury trial is inconsistent with his admissions in court and in his written waiver.

Even accepting as true petitioner's averment that his counsel failed to inform him of the nature of his right to jury trial, he again cannot show prejudice. Although petitioner contends that had he been properly advised he would not have waived his Sixth Amendment right and would have insisted on a trial by jury, the government's evidence at trial was more than sufficient for "either a judge or jury, acting in accordance with law, to find [him] guilty," and petitioner has not presented any evidence, or even alleged, that Judge Hardiman was biased against him or that the bench trial was conducted in an unfair manner. United States v. Lilley, 536 F.3d 190, 196 (3d Cir. 2008). Accordingly, petitioner cannot show prejudice because he has not demonstrated a "reasonable probability" that the proceeding would have been different had he not waived his right to a jury trial on the advice of counsel. Id. at 197.

Petitioner's third ground of ineffective assistance of counsel alleges that Attorney Klein failed to exercise due diligence in obtaining a copy of the CAD report of the 911 call describing the events surrounding the robbery. This report was the "newly discovered evidence" upon which petitioner sought a new trial.

Although Judge Hardiman concluded in his decision denying petitioner's motion for new trial that petitioner failed to show that the CAD report could not have been discovered with due diligence before trial, any lack of due diligence does not ipso facto render counsel's performance deficient in failing to obtain the CAD report. But even assuming that the failure to exercise due diligence in obtaining the CAD report fell below an objective standard of reasonableness, petitioner can show no prejudice.

In his decision denying petitioner's motion for new trial, Judge Hardiman explicitly found that the CAD report "would not probably produce an acquittal." Although petitioner claimed in his new trial motion, as he does in his pending §2255 motion, that the CAD report contradicts the eyewitness testimony of Eicher and Margie regarding the robbery, even accepting his allegations as true, "inconsistencies between Eicher and Margie's testimony and what the CAD report shows do not render probable an acquittal on the §922(g)(1) charge, as [petitioner's] conviction on that charge is amply supported by the officers' testimony about the post-robbery events." (Document No. 51 at 3, J. Hardiman). This finding subsequently was affirmed on appeal.

As petitioner cannot show a reasonable probability that the outcome of his trial would have been different had Attorney Klein exercised due diligence in obtaining a copy of the CAD report, he was not prejudiced by any arguable deficient performance in that regard.

Petitioner's next argument, that trial counsel was ineffective in failing to investigate the criminal background of eyewitness Robert Eicher, lacks merit. Petitioner contends that he advised his counsel that Robert Eicher "may have a criminal record under another name and asked him to investigate" and that counsel failed to do so. Petitioner has submitted documents indicating that a Robert C. Eicher was born in McKeesport on May 17, 1958, lived at 1515 Scott Street and had no criminal record, and that a Robert J. Eicher was born in McKeesport on January 28, 1957, lived at 1717 Scott Street and has a "lengthy criminal record." It is petitioner's "position that this is the same individual and is using two different social security numbers."

Petitioner's argument is based on pure speculation and has no support in the record. At trial, witness Robert Eicher testified that his address was 1515 Scott Street and provided his social security number. Prior to trial, the government provided defense counsel with the results of an NCIC query affirming that Eicher had no record of any arrests or convictions.

Even accepting petitioner's averment that he brought his suspicion to Attorney Klein prior to trial, the court finds no deficient performance in counsel's decision not to pursue it.

"<u>Strickland</u> ... calls for great deference to an attorney's tactical decision to forego particular lines of investigation." <u>Blystone v. Horn</u>, 664 F.3d 397, 420 (3d. Cir. 2011). In this case, at best, all petitioner has shown is that two individuals with the same first and last name, but a different middle initial, and who were born in the same year both lived on the same street. Any contention that they are the same person is nothing but baseless speculation and the court cannot say that counsel's decision not to "investigate" the matter further was not objectively reasonable.

Moreover, were the court to assume deficient performance in failing to investigate Eicher, petitioner cannot show prejudice. Even if the Eicher who testified turned out to be the Eicher with a criminal record, and even if his testimony effectively could have been impeached based upon that criminal record, petitioner cannot avoid the fact that Judge Hardiman found <u>two</u> independent bases for conviction, actual possession of the firearm during the armed robbery as testified to by Eicher <u>and</u> constructive possession of the firearm during the traffic stop. Thus, even assuming that Eicher's testimony could be totally discredited, the result of the proceeding would have been the same because petitioner nevertheless constructively possessed the firearm later and Eicher's testimony had nothing to do with that finding.

Petitioner next contends that his counsel was ineffective in failing to advise him that the decision on whether to testify belonged to petitioner and not to counsel. Petitioner contends

that he advised Attorney Klein that he wished to testify but that Attorney Klein indicated he did not want petitioner to. Petitioner alleges that he was unaware he could "override" his counsel's decision.

Petitioner is not contending that he was not aware of his right to testify, rather he is contending that his counsel advised him not to and that he was unaware that the ultimate decision was up to him. Initially, the court believes that trial counsel's conduct in advising petitioner not to testify was reasonable trial strategy and therefore not ineffective assistance of counsel. Petitioner has an extensive criminal record and, as the government informed Attorney Klein prior to trial pursuant to Fed. R. Crim. P. 609, "if petitioner testifies as a witness, I intend to impeach him with his prior felony convictions." Exhibit 4 to Government's Opposition to Petitioner's §2255 Motion . The court will not second-guess counsel's strategy to advise petitioner not to take that risk. See, e.g., United States v. Aldea, 450 Fed. Appx. 151 (3d Cir. 2011)(no ineffectiveness where counsel advised defendant not to testify, inter alia, because risk of exposing him to cross-examination was too great).

Moreover, petitioner cannot show a reasonable probability that the result of the trial would have been different had he testified. Although petitioner sets forth in his affidavit the nature of what he would have testified to had he taken the stand, his credibility would have been weighed against that of the 4 police officers involved in the traffic stop as well as that of

✎AO 72
(Rev. 8/82)

Margie, the back seat passenger. In addition, the testimony that petitioner now indicates he would have offered at trial is inconsistent with his own written statement, (Exhibit 1 to Government's Opposition to Petitioner's §2255 Motion), the statement of one of his own defense witnesses and the statements of the government witnesses. Because there is no evidence that petitioner's testimony would have changed the result of the trial, petitioner cannot establish prejudice under Strickland. See Aldea, 450 Fed. Appx. at 3.

Petitioner's sixth claim of ineffective assistance of counsel alleges that Attorney Klein was ineffective in failing to call as a witness Jason Collins, the driver of the vehicle in which petitioner was a passenger. Petitioner alleges that Collins would have "exonerated" him by supporting petitioner's defense theory that petitioner never had a pistol. Petitioner concedes that Attorney Klein interviewed Collins about his proposed testimony, but that he failed to put him on the stand.

As noted before, defense counsel's strategic decisions, such as what witnesses to call, are reviewed with a strong presumption of correctness. Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d. Cir. 1996). Courts should be highly deferential to reasonable strategic decisions and guard against the temptation to engage in hindsight. Marshall v. Hendricks, 307 F.3d 36 (3d. Cir. 2002).

Strategic choices that counsel makes after conducting a thorough investigation "are virtually unchallengeable." Blystone, supra, 664 F.3d at 420. Here, Attorney Klein, after interviewing

AO 72
(Rev. 8/82)

Collins, made the strategic decision not to put him on the stand. The court cannot say that this decision was objectively unreasonable in light of Collins' own participation in the incident, particularly where petitioner's own written statement indicated that "the robbery was orchestrated by Jason Collins." Exhibit 1 to Government's Opposition to Petitioner's §2255 Motion. Nor has petitioner demonstrated that the outcome of the trial would have been different had Collins testified.

Petitioner next alleges that his counsel was ineffective at sentencing for failing to object to petitioner's sentence being enhanced as a "career offender" under the advisory sentencing guidelines. Petitioner suggests that Attorney Klein was ineffective because he failed to argue that petitioner's prior burglary convictions under Pennsylvania law do not qualify as "crimes of violence" under the guidelines.

Petitioner's argument is without merit. Contrary to petitioner's contention, he was not found to be a career offender under U.S.S.G. §4B1.1, he was found to be an armed career criminal under U.S.S.G. §4B1.4(a), the guidelines provision which implements 18 U.S.C. §924(e). Accordingly, petitioner's attempt to show that counsel was ineffective by failing to argue that petitioner's prior state burglary convictions do not meet the definition of "crime of violence" for purposes of the career offender guidelines is misplaced.

Pursuant to U.S.S.G. §4B1.4(a), a defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. §924(e) is

an armed career criminal under the guidelines. In this case, Attorney Klein did challenge the application of the enhanced penalties under the ACCA in both a sentencing memorandum and at the sentencing hearing. However, Judge Hardiman overruled petitioner's objections and correctly concluded that petitioner qualifies for the enhanced penalties under 18 U.S.C. §924(e).

Accordingly, it is clear from the record that Attorney Klein in fact did raise the argument that petitioner now contends he did not make and that the argument was rejected on its merits by the court. Merely because counsel was unsuccessful in his challenge does not render his performance deficient. Petitioner likewise can show no prejudice arising from this claim as petitioner's argument is without merit. See United States v. Zemba, 403 Fed. Appx. 649, 651 (3d Cir. 2010) ("[t]he applicable definitions for [armed career criminal under U.S.S.G. §4B1.4] are derived from statute.").[5]

Finally, petitioner's allegation that Attorney Klein was ineffective for failing to move the court for credit for time

---

[5]     The crux of petitioner's argument is that several of his predicate burglaries would not qualify as "crimes of violence" within the meaning of §4B1.1(a) because they were burglaries of unoccupied structures, not dwellings. Pursuant to §4B1.2(a)(2), "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that is a "burglary of a dwelling." However, the definition of "violent felony" in 18 U.S.C. §924(e)(2)(B)(ii) does not specify that a burglary must be a burglary "of a dwelling" to qualify as a violent felony. It is that statutory definition of violent felony that controls in this case, not the definition of "crime of violence" for career offender purposes. Here, petitioner had four previous convictions for burglary, all of which qualify as a "violent felony" under the statute.

served on a state sentence pursuant to U.S.S.G. §5G1.3(b)[6] likewise is without merit. Petitioner has presented no evidence that he would have qualified for a sentence adjustment under that section and, in fact, petitioner concedes that his counsel did ask for credit for time served at the sentencing hearing but without specifically citing to U.S.S.G. §5G1.3.

In any event, even assuming that petitioner may have qualified for the 7-month adjustment he alleges he was entitled to, and further assuming that counsel's performance was deficient in failing to request the adjustment specifically under §5G1.3(b), there clearly is no prejudice. The adjustment for which petitioner argues is an adjustment to a guidelines sentence. However, Judge Hardiman granted petitioner a downward variance from his advisory guideline sentencing range of 262 months to the statutory mandatory minimum of 180 months, and the court could not have adjusted that sentence below that 180-month mandatory minimum sentence based solely on an adjustment authorized under the guidelines. See e.g., U.S.S.G. §5G1.1(c)(2) (a sentence may be imposed at any point within the applicable guideline range, provided that the sentence ... "is not less than any statutorily required minimum sentence.") Accordingly, petitioner has shown no prejudice.

---

[6] U.S.S.G. §5G1.3 allows a court to adjust a sentence for any period of imprisonment already served on an undischarged term of imprisonment that resulted from another offense that is relevant conduct to the instant offense if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

AO 72
(Rev. 8/82)

For all of the reasons discussed, the court finds that trial counsel's performance was not deficient as petitioner has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" in any of the areas about which he complains. See Strickland, 466 U.S. at 689. Moreover, even if petitioner could demonstrate that trial counsel's performance was deficient in some respect, petitioner has not established that the result of the trial would have been different, as the totality of the evidence against petitioner was overwhelming, including two independent bases underlying his conviction, and any minor errors that counsel arguably may have committed would not have altered the verdict of guilty. Accordingly, petitioner's claims of ineffective assistance of counsel all must fail.

## Conclusion

For all of the foregoing reasons, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 fails to raise any meritorious claim of ineffective assistance of counsel and must be denied as a matter of law.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary

means of separating meritorious from frivolous appeals." <u>Barefoot</u> <u>v. Estelle</u>, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause). Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). As this court's foregoing discussion makes clear, petitioner has failed to make a substantial showing of a denial of a constitutional right. Accordingly, a certificate of appealability should not issue in this case. <u>See</u> <u>Santana v. United States</u>, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: March 28, 2012

cc:  Soo C. Song
     Assistant U.S. Attorney

     Thomas Thornton